**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gail Marie LaCrosse,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-16-01995-PHX-DLR<br><br>**ORDER** |

Plaintiff Gail Marie LaCrosse applied for Social Security Disability Insurance benefits in May 2014, alleging that she became disabled as of August 15, 2012 due to depression, anxiety, chronic fatigue syndrome, and chronic obstructive pulmonary disease ("COPD"). After state agency denials, LaCrosse appeared for a hearing before an administrative law judge ("ALJ"). A vocational expert ("VE") also was present and testified. Following the hearing, the ALJ issued a written decision finding that LaCrosse was not disabled within the meaning of the Social Security Act ("SSA"). The ALJ's decision became the agency's final decision after the Social Security Administration Appeals Council denied LaCrosse's request for review. LaCrosse now seeks judicial review of that decision. For the following reasons, the decision of the Commissioner of Social Security Administration is affirmed.

## **STANDARD OF REVIEW**

It is not the district court's role to review the ALJ's decision de novo or otherwise

determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations and citation omitted). Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

## **DISCUSSION**

To determine whether a claimant is disabled for purposes of the SSA, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. If not, the

ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ determined that LaCrosse meets the insured status requirements of the SSA through December 31, 2017, and has not engaged in substantial gainful activity since her alleged disability onset date. (A.R. 14.) The ALJ found at step two that LaCrosse's degenerative disc disease is a severe impairment, but concluded at step three that it does not meet or medically equal the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 14-15.) At step four, the ALJ found that LaCrosse has the RFC to perform:

> Medium work . . . except the claimant is able to sit for 7-8 hours out of an eight-hour day; and stand and/or walk for 7-8 hours out of an eight-hour day. She is able to lift and/or carry twenty-five pounds frequently, and fifty pounds occasionally. Her ability to push and/or pull corresponds to her lifting and carrying abilities. She can frequently twist, stoop (bend), crouch/squat, climb ladders or climb stairs, ramps or stepstools. She cannot work in a fast-paced production environment. She is able to attend and concentrate in two-hour blocks of times throughout an eight-hour workday with the two customary ten to fifteen minute breaks and the customary thirty to sixty minute lunch period.

(*Id.* at 16 (footnote omitted).) Based on this RFC, the ALJ found that LaCrosse is capable of performing past relevant work as an office nurse and as a prison pre-release coordinator. (*Id.* at 19.) Accordingly, the ALJ found that LaCrosse is not disabled within the meaning of the SSA. (*Id.* at 20.)

On appeal, LaCrosse argues that the ALJ erred at step two by failing to perform the agency's psychiatric review technique ("PRT") assessment of her mental impairments, and at step four by relying on jobs that do not meet the definition of past relevant work. (Doc. 16 at 2.) The Court disagrees.

**I. Necessity of PRT Analysis**

When determining whether a claimant has a medically severe impairment or

combination of impairments, agency regulations require the ALJ to follow the PRT. 20 C.F.R. § 404.1520a; *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).

> Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder.

*Keyser*, 648 F.3d at 725 (citations omitted). "An ALJ's failure to comply with 20 C.F.R. § 404.1520a is not harmless if the claimant has a 'colorable claim of mental impairment.'" *Id.* at 726 (quoting *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000)). A claim is colorable if it is not "wholly insubstantial, immaterial, or frivolous." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987).

As noted, LaCrosse alleged disability due, in part, to depression and anxiety. At step two, the ALJ thoroughly discussed the medical evidence and concluded that LaCrosse "does not suffer from a severe mental impairment," but did not document PRT findings. (A.R. 15.) The ALJ's omission is not reversible error, however, because LaCrosse failed to present a colorable claim of mental impairment. Indeed, agency regulations state that a medically determinable mental impairment "must result from . . . psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, *not only by [the claimant's] statement of symptoms.*" 20 C.F.R. § 404.1508 (emphasis added). LaCrosse did not present such evidence here.

To the contrary, LaCrosse testified that she did not seek treatment from a mental health provider. Instead, she "talk[ed] out things" with her family and saw her "regular doctor," Mohammed Zara. (A.R. 34-35.) But neither Dr. Zara nor Dr. Vincent Tapia, another of LaCrosse's treating physicians, documented psychological abnormalities other

than recording LaCrosse's own statement of her symptoms. LaCrosse's medical records repeatedly documented normal psychiatric examinations. (*Id.* at 221, 224, 228, 233, 291, 397.) She also denied symptoms of depression during an October 2013 examination by Dr. Tapa. (*Id.* at 227.)

To show that her medically determinable mental impairment claim is colorable, LaCrosse relies primarily on five sources: (1) Dr. Zara's opinion that LaCrosse suffers symptoms of severe anxiety, extreme fatigue, and forgetfulness, which affect her concentration and ability to handle stressful situations (*Id.* at 367, 369); (2) consultative psychologist Dr. Jonna Krabbenhoft's diagnosis of adjustment disorder and mixed mood (*Id.* at 357); (3) Dr. Tapia's February 2014 diagnosis of acute reaction to stress (*Id.* at 230); (4) consultative examiner Dr. Jerome Rothbaum's diagnoses of anxiety, depression, and possible early chronic brain syndrome (*Id.* at 362); and (5) treating physician Dr. Eleanor Clark's opinion that LaCrosse's chronic fatigue syndrome results in social interaction difficultlies and memory loss, and that LaCrosse cannot handle any stressors, including those of low stress jobs (*Id.* at 245, 268). This evidence, however, does not hold up to close inspection.

First, as previously noted, Dr. Zara's treatment records consistently reported normal psychiatric examinations. The lone exception is a treatment record from April 2015, in which Dr. Zara notes LaCrosse's own subjective statement of her anxiety and stress and also objectively reports that LaCrosse was "extremely nervous and jittery," though "[t]hought processes are normal." (*Id.* at 399, 401.)

Next, though Dr. Krabbenhoft diagnosed LaCrosse with adjustment disorder with mixed mood and noted that she appeared tearful and anxious, his report also reflects that LaCrosse scored 28/30 on a mini-mental state examination, maintained appropriate eye contact, was oriented, and had normal thought content and intact insight and judgment. (*Id.* at 354, 356.) Moreover, the social interaction limitations assessed by Dr. Krabbenhoft are based primarily on LaCrosse's own subjective symptom reports, rather than objective observations or the results of laboratory findings or other diagnostic

techniques. (*Id.* at 358.)

The same holds true for Dr. Tapia's February 2014 diagnosis of acute reaction to stress. Though his treatment records note that LaCrosse subjectively reported "some increase and intermittent stress and anxiety," Dr. Tapia observed that LaCrosse was "[o]riented to person, place, time and general circumstances. Mood and affect appropriate. Recent and remote memory grossly intact." (*Id.* at 230.) Moreover, in the same treatment record Dr. Tapia reported that LaCrosse "comes in today for followup (sic) evaluation with a concern regarding stress that she has been under[] for the past couple years. . . . [LaCrosse] has never brought this issue up to us in the time that this has occurred and has never followed with psychiatry[.]"[1] (*Id.* at 229.) It is apparent, then, that Dr. Tapia's diagnosis is based solely on LaCrosse's subjective symptom reports.

Likewise, though Dr. Rothbaum recorded impressions of anxiety and depression, his report is devoid of abnormal objective mental status findings. Instead, Dr. Rothbaum noted LaCrosse's own statement regarding her symptoms, but objectively observed that she was "alert, oriented, appropriate, cooperative with adequate recall, adequately groomed, and in no acute distress." (*Id.* at 360-61.) Further, Dr. Rothbaum's medical source statement regarding LaCrosse's work-related limitations characterized her chronic brain syndrome as "questionable." (*Id.* at 363.)

Dr. Clark—who is an OB/GYN, not a mental health provider—conducted no tests or evaluations of LaCrosse's psychiatric state. (*Id.* at 246-47.) Though Dr. Clark identified depression as a symptom of LaCrosse's chronic fatigue (*Id.* at 266), this finding appears, again, to be based solely on LaCrosse's own statements rather than on objective observations, laboratory findings, or other acceptable diagnostic techniques.

Moreover, the ALJ assigned only partial weight to Dr. Krabbenhoft's opinion because "there is insufficient medical evidence of record to substantiate [LaCrosse's] alleged social limitations, other than [her] self-report. [LaCrosse] has not engaged in

---

[1] By July 2014, LaCrosse still had not followed up with psychiatry per Dr. Tapia's recommendation. (A.R. 270.)

mental health treatment and her activities of daily living belie her self-reported limitations." (*Id.* at 18.) Likewise, the ALJ assigned reduced weight to Dr. Zara's opinion because it "appears to be based, primarily, on [LaCrosse's] self-report," Dr. Zara's "own treatment records do not contain support for his assessed limitations," and "there is little to no evidence that [he] was able to evaluate [LaCrosse's] alleged anxiety (if any)[.]" (*Id.*) Lastly, the ALJ gave no weight to Dr. Clark's opinion in part because it is "based solely on [LaCrosse's] self-report[.]" (*Id.*) This Court reviews only those issues raised by the party challenging the ALJ's decision, *see Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001), and LaCrosse notably does not challenge the ALJ's weighing of the medical opinion evidence.

In sum, the record lacks sufficient evidence to support a colorable mental impairment claim. LaCrosse's subjective statements regarding her symptoms are not equivalent to laboratory findings, signs, and symptoms, or the results of clinically acceptable diagnostic techniques simply because they are recorded by her physicians. Accordingly, the ALJ was not required to document the PRT analysis and did not err in concluding that LaCrosse failed to establish a medically determinable mental impairment. *See Coleman v. Colvin*, 524 F. App'x 325, 326 (9th Cir. 2013) ("[T]he ALJ's determination that [claimant] failed to establish a medically determinable mental impairment is supported by substantial evidence because [claimant] failed to present any evidence of signs or laboratory findings establishing that [she] suffered from a mental impairment.").

**II. Past Relevant Work**

A claimant is not disabled within the meaning of the SSA if she has the RFC to perform past relevant work, defined by agency regulations as "work . . . done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). In making this determination, the ALJ may rely on vocational experts and other resources, such as the Dictionary of Occupational Titles ("DOT"), provided that these sources do not rely on assumptions or

definitions that are inconsistent with other agency regulations. *Id.* at (b)(2); SSR-004p, 2000 WL 1898704, at *3.

For each job title, the DOT provides a specific vocational preparation ("SVP") measurement, defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App'x C, 1991 WL 688702. SVPs range from 1 to 9, with 1 being the shortest duration of training and 9 being the highest. *Id.* Training may be acquired from any of the following:

> a. Vocational education (high school; commercial or shop training; technical school; art school; and that part of college training which is organized around a specific vocational objective);
>
> b. Apprenticeship training (for apprenticeable jobs only);
>
> c. In-plant training (organized classroom study provided by an employer);
>
> d. On-the-job training (serving as learner or trainee on the job under the instruction of a qualified worker);
>
> *e. Essential experience in other jobs (serving in less responsible jobs which lead to the higher grade job or serving in other jobs which qualify).*

*Id.* (emphasis added).

Prior to her alleged onset of disability, LaCrosse's prior jobs all were in the nursing field. Specifically, she worked as a general duty nurse in a hospital from 1998 to 2001, an office clinic nurse for four months from June to October 2001, a staff nurse coordinator from 2002 to 2011, and a pre-release mental health coordinator for five months from March to August 2012. (A.R. 46, 196.) All of these jobs have SVPs of 7, meaning they require anywhere between two and four years of training time. (*Id.* at 46.); DOT, App'x C; DOT 075.364-010, 1991 WL 646751; DOT 075.374-014, 1991 WL 646753; DOT 195.107-030, 1991 WL 671574. Relying on testimony from the VE, the ALJ found at step four that, despite her impairments, LaCrosse has the RFC to return to her past relevant work as an office nurse and a pre-release coordinator. (A.R. 46.)

LaCrosse contends that these jobs do not constitute past relevant work because she held neither for sufficient time to learn it. (Doc. 16 at 12.) "SVP, however, does not refer to the length of time a job was held, but the approximate length of training time it takes to learn how to do it. As noted above, essential experience in other jobs may constitute vocational training." *Bustamante v. Colvin*, No CV-13-02080-PHX-ESW, 2015 WL 136016, at *10 (D. Ariz. Jan 9, 2015). At least with respect to the office clinic nurse position, there is substantial evidence that, through her many years of work in other nursing jobs, LaCrosse acquired sufficient vocational training such that her briefer stint as an office clinic nurse may be deemed past relevant work. *See id.* at *10-11 (affirming ALJ's finding that that claimant's prior nine-month stint as a project manager constituted past relevant work because he "became a project manager after approximately ten years of being a construction superintendent," and therefore his "time working as a construction superintendent may be considered as vocational training").

LaCrosse argues that the DOT's definition of SVP as including essential experience in other jobs is inapplicable for two reasons, neither of which is persuasive.

First, she contends that that the "essential experience" provision applies only to promotional situations. (Doc. 18 at 4-5.) By its own terms, however, the DOT defines "essential experience" as either "serving in less responsible jobs which lead to the higher grade job" (i.e., promotions) or "serving in other jobs which qualify." DOT, App'x C.

Second, LaCrosse argues that the DOT's definition of SVP cannot apply because it conflicts with the agency's definition of past relevant work. (Doc. 18 at 5-6.) But LaCrosse fails to identify a specific agency definition that conflicts with the DOT, and the Court finds none. Under agency regulations, a prior job qualifies as past relevant work if it "lasted long enough for [the claimant] to learn to do it." 20 C.F.R. 404.1560(b)(1). Similarly, the DOT defines SVP as the "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App'x C. Though the DOT provision is wordier, the Court sees no conflict in these

1 | definitions.

LaCrosse nonetheless argues that a conflict exists because agency regulations do not speak to "essential experience in other jobs." But agency regulations do not specifically define how the length of training time is to be calculated. A conflict does not exist simply because the DOT supplements agency regulations. Stated differently, there is a meaningful difference between contradicting a specific agency definition and filling gaps left by the agency's silence. For these reasons, the Court finds that the ALJ did not err at step four.

## **CONCLUSION**

For the foregoing reasons, the ALJ's decision is free of legal error and supported by substantial evidence.

**IT IS ORDERED** that the final agency decision is **AFFIRMED.** The Clerk shall enter judgment accordingly and terminate this case.

Dated this 26th day of September, 2017.

Douglas L. Rayes
United States District Judge